LILLIAS PIPER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52731.    Promulgated February 26, 1935.

*W. H. Harris, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, for the respondent.

144

OPINION.

MORRIS: Subdivisions (a) and (c) of section 202 of the Revenue Act of 1926 provide as follows:

(a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

\* \* \* \* \* \* \*

(c) The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

There are two questions for our determination, both of which arose from the sale of the petitioner's 57th Street property in 1926—(1) the effect upon the gain realized, if any, of the default of the First National Bank of Palm Beach and the resulting failure of the petitioner to receive the proceeds from the $20,000 check received by her in that transaction together with the further loss of an additional $4,000 deposited by her in that institution, and (2) whether the respondent correctly included the face value of the mortgage, $37,500, less 10 percent, received as a part of the sale price in that transaction, in the determination of taxable net income.

While the fortuitous closing of the First National Bank of Palm Beach resulted in some ultimate loss, whether deductible for tax purposes or not we need not decide, the fact remains that she first received $25,000 in cash or the equivalent which she deposited in an institution of her own choosing. Thus when these amounts were received she was the recipient of income irrespective of whether she later lost it or not. Under the statute all gross income must be included in the return, except that exempt from taxation, although losses arising within the same taxable year may exceed the amount thereof. Such losses must be claimed, as deductions under the applicable provisions of the statute. The petitioner makes no claim for a loss, as such, by reason of the bank closing. She merely contends that she received no income within the taxable year by reason of the closing of said bank and her resulting inability to withdraw the cash deposited therein. If her position would be logically sustained the same rule would hold if she had used such funds to speculate in the stock market and had suffered a loss.

Neither are we able to conclude, as the petitioner would have us, that the $37,500 trust, which she received as part of the consideration in the sale of her property during the taxable year, had no fair market value. The petitioner was the only witness to testify in her behalf. Her sole testimony upon this subject was to the effect that she attempted, through her close personal friends, Williams and Leys, to sell the mortgage, but was unable to do so. Williams was a real estate and insurance broker and Leys a wholesale jeweler, and neither was shown to have any special qualification to dispose of the mortgage paper, nor, indeed, is there any showing of the extent to which they exerted themselves in so doing. The petitioner's counsel makes much of the fact that the real purchasers did not sign the mortgage notes, but that Bertha Kahn, a dummy, did so. Though we are willing to concede, for the purpose of discussion, that the negotiability of the mortgage may have been affected by this fact, there is nothing to show, except that Bertha Kahn was a domestic servant, that she was not perfectly reliable and able to respond in payment thereof, even if the property had

not been sufficient in value to cover the amount of the mortgage upon forced sale.

The record shows that the property sold in 1926 for $75,000, $62,500 greater than the first mortgage of $12,500. We can only infer, from the record, therefore, that the property was reasonably worth that amount in the absence of a showing that it was not. Therefore, there was ample security in the property itself to cover the $37,500 second mortgage at the time of sale. It is significant too, though not conclusive of fair market value within the taxable year, that the mortgage was finally paid in full. It is also significant to note that an $8,000 loan was arranged by Williams upon his and the petitioner's personal endorsements, secured by this mortgage. If the petitioner had shown that Williams' and her personal endorsements at the bank were in and of themselves good for such a loan at that institution, the fact that the mortgage was posted as collateral security therefor might be discounted. But we have no such proof and we may reasonably assume that the bank attributed a substantial value to the mortgage when the loan was made.

For the above and foregoing reasons we are of the opinion that the respondent's determination must be approved.

*Judgment will be entered for the respondent.*